Richard G. FOOTE, Shirley P. Foote, and Venice Theatre Corporation, Plaintiffs and Respondents,

v.

Newton A. TAYLOR, Defendant and Appellant.

No. 16533.

Supreme Court of Utah.

July 21, 1981.

D. John Musselman, Orem, for defendant and appellant.

Milton J. Harmon, Nephi, for plaintiffs and respondents.

**CROCKETT, Retired Justice:**

The plaintiffs, Shirley and Richard Foote, and the Venice Theatre Corporation, brought suit against the defendant, Newton A. Taylor, for breach of his contractual promises: (1) to purchase furniture and equipment in the Venice Theatre and Pizza Hut located in Nephi; and (2) to pay rentals on that property.

Upon a trial to the court, it made findings in favor of the plaintiffs and awarded them judgment for $2,052.16 as rental, and $1,000 for liquidated damages as provided in the purchase agreement; and for $1,150 as attorney's fees.

On August 7, 1978, the parties entered into an agreement (Earnest Money Receipt and Offer to Purchase) whereby plaintiffs Foote were to sell and defendant Taylor was to buy the theater and restaurant equipment in the Venice Theatre and Venice Pizza Hut for the price of $40,000. It required defendant to pay $1,000 down, $5,500 on or before October 15, 1978, $3,500 on or before February 15, 1979, and the remaining $30,000 amortized over 15 years, with 9% interest. It also provided that "$1,000 is non-refundable if buyer is unable to perform on contract . . . ."

On August 11, 1978, four days after the signing of the agreement referred above, the other plaintiff, Venice Theatre Corporation, entered into a separate contract with the defendant Taylor by which it gave him a lease with an option to purchase the real estate and the improvements thereon known as the Venice Theatre and the Pizza Hut, also, for a purchase price of $40,000. That agreement required the defendant to pay a monthly rental of $240 for a term of three years, or until the option to purchase was exercised. It contained the often-used provision that any defaulting party would pay any costs, expenses, and reasonable attorney's fees incurred as a result of a breach.

At the time of the execution of the lease, the parties orally agreed that the plaintiffs would be responsible for having a faulty roof repaired. There was, however, a misunderstanding as to who was to arrange for the repairs, and consequently the work was not completed until October 28, 1978, 2½ months after the signing of the lease. During October, the defendant had refused to make any payments because the roof was in need of repair. Upon assurance by the defendant that the lease and purchase payments were being placed in a trust account, and would be released after the repairs were made, plaintiff made arrangements to have those repairs made. Three days after

that job was completed, on October 31, 1978, the defendant quit the premises claiming that the repairs had not been satisfactorily accomplished.

During the 2½ months that the defendant was in possession of the restaurant and theater, he began extensive remodeling of the kitchen. This included removal of a wall and the sinks and cupboards.

Defendant makes two main contentions: that the purchase agreement and the lease-option referred to above were merged; and that the plaintiff is limited to the $1,000 liquidated damages provided for in the purchase agreement, or alternatively, that the award of $1,000 for damages caused by defendant's renovation is not supported by the evidence.

■ In support of his contention that the purchase and lease agreements were merged, defendant offered testimony at trial that the two agreements were intended as a "package deal." He also places reliance on a clause in the purchase agreement which states: "Sale contingent upon buyer [defendant] approving lease agreement attached to contract." The meaning and effect that a contract is to be given depends primarily on the intent of the parties; and such intent is to be ascertained first by looking within the four corners of the agreement itself.[1] As to merger: The general rule is that one contract will not merge into another unless it is plainly shown that that was the intent of the parties;[2] and this is usually where the later contract fully covers an earlier one,[3] but not so unless the two contracts are between the same parties.[4] Here, the fact that the first agreement (herein referred to as the purchase agreement) refers to a lease agreement would not necessarily compel the trial court to find that the two agreements were intended to be merged, so that the provision for liquidated damages in the first agreement would limit damages which may be suffered by a breach of the lease-option agreement.

■ It is significant that the two contracts under scrutiny have different sellers. In the first, the sellers are the plaintiffs Foote, and the subject matter is the equipment in the theater and the restaurant. The second contract is for the lease with option to purchase from the Venice Theatre Corporation the property wherein the theater and restaurant are situated. In the light of those facts, we see no reason to disagree with the view adopted by the trial court that there was not a merger of the two agreements, nor with his conclusion that the plaintiffs were entitled to damages resulting from defendant's breach of both the purchase and the lease-option agreements.

In support of defendant's contention that plaintiffs failed to show damages sufficient to support the $1,000 awarded as damages to the premises, he points to the trial court's conclusion, which stated:

5. The plaintiffs' claim for renovation or repair of the work started by the defendant in the pizza parlor did not clearly show the extent of damage suffered. It appears that fair and equitable compensation for any such damage to restore this portion of the building is compensated by the $1,000 down payment made by the defendant to the plaintiff which the Court allows the plaintiff to retain.

The question whether the evidence is sufficient to support a finding of fact is generally a question of law for the court to determine.[5] Where there is any fair and reasonable basis in the evidence upon which

1. *Oberhansly v. Earle*, Utah, 572 P.2d 1384 (1977).

2. See generally, 17A C.J.S. Contracts § 380.

3. Id., § 382.

4. See, e. g., *Clark v. Compania Ganadera de Cananea, S.A.*, 94 Ariz. 391, 385 P.2d 691 (1963).

5. *Coronado Min. Corp. v. Marathon Oil Co.*, Utah, 577 P.2d 957 (1978).

the trial court can be affirmed, it is our duty to do so.[6] In the instant case, it appears that the trial court believed that there was substantial damages to the premises and that in any event the provision for forfeiture of the $1,000 was not unreasonable.

Our decision herein is made in awareness of the rule that if a provision in a contract provides for liquidated damages which are so grossly excessive in comparison to actual damage suffered that it is unconscionable, the court will not enforce it.[7] But in this instance, we do not see that the provision that the $1,000 was to be forfeited if the defendant did not perform his contract is anything so unreasonable or disproportionate to actual damages suffered as to be such an unenforceable penalty.

Other errors assigned have been considered and are deemed to be without merit.

Affirmed. Costs to plaintiffs (respondents).

HALL, C. J., and STEWART, J., concur.

RIGTRUP, District Judge, concurs in the result.

MAUGHAN, J., does not participate herein; RIGTRUP, District Judge, sat.

WILKINS, J., heard the arguments, but resigned before the opinion was filed.

---

**6.** *Pollesche v. Transamerican Ins. Co.*, 27 Utah 2d 430, 497 P.2d 236 (1972).

**7.** *Themy v. Seagull Enterprises, Inc.*, Utah, 595 P.2d 526 (1976).