Sonja M. KING and Michael King,
Plaintiffs and Appellants,

v.

Joe BARRON, Defendant and Appellee.

No. 19968.

Supreme Court of Utah.

Nov. 4, 1988.

R. Dale Potter, Lynn J. Clark, Salt Lake City, for plaintiffs and appellants.

Lowell V. Smith, Salt Lake City, for defendant and appellee.

HOWE, Associate Chief Justice:

This is an action for damages for personal injuries suffered by Sonja King and for loss of consortium suffered by her husband, Michael King. Their claims stem from an automobile accident wherein a vehicle driven by appellee Joe Barron collided with the rear of the King vehicle. From a judgment entered on a jury verdict awarding Mrs. King $1,000, the Kings bring this appeal.

On March 28, 1982, Michael King was the driver of a vehicle in which Sonja King and two of their children were passengers. While stopped at a semaphore at the intersection of Center Street and State Street in Midvale, Utah, the King vehicle was struck in the rear by a vehicle driven by Barron. Though the impact of the collision was slight, Mrs. King testified that she then experienced pain and injury to her neck and

lower skull, extending to the top of her back and right shoulder. The accident allegedly aggravated injuries that she had received in an earlier collision, which occurred on December 13, 1978. That previous accident involved a vehicle owned and operated by Darrel LeRoy Fereday which collided with the rear of a vehicle being driven by Mrs. King.

In December of 1981, to alleviate the pain she suffered from injuries sustained in the 1978 accident, Mrs. King had an electromyelogram and neck surgery consisting of disc adhesion and fusion. At the time of the 1982 collision, she was recovering from this medical treatment. Mrs. King claimed that the 1982 accident aggravated her recovery and also caused her to experience some left neck and shoulder pain and some increased numbness in the thumb and fingers of her left hand.

The Kings brought this action against both Fereday and Barron. Mrs. King sued for her personal injuries, and Mr. King sued for loss of consortium. Prior to trial, the court dismissed Mr. King from the suit for failure to state a claim upon which relief could be granted. Upon motion of Barron, Mrs. King's complaint against him and Fereday was severed and separate trials were held. The trial against Fereday resulted in a jury verdict finding Mrs. King 100 percent negligent and denying her any recovery. We affirmed on appeal. *King v. Fereday*, 739 P.2d 618 (Utah 1987). At the trial against Barron, the jury in a special verdict found Barron negligent, that his negligence was a proximate cause of the accident, and that Mrs. King was entitled to $1,865 in damages. Upon motion and stipulation, the verdict was reduced by $865, and judgment was entered against Barron in the amount of $1,000, plus costs incurred. The Kings appeal.

## I

The Kings first contend that the trial court erred and abused its discretion by severing the trial of their suit against Barron and Fereday. They contend that pursuant to Utah Rule of Civil Procedure 19(a), Fereday was a necessary party for a full and fair determination of their rights. Because the injuries sustained in the 1978 accident were allegedly aggravated by the 1982 accident, the Kings argue that it would be very difficult for a jury to apportion damages between the two defendants and award the Kings complete relief without joinder. They assert that the jury missed evidence and explanations from Fereday, who was not present, that would have been helpful in determining damages. The Kings further contend that if Fereday was not a necessary party, he was at least a permissible party under Utah Rule of Civil Procedure 20(a), since their causes of action against Barron and Fereday arise "out of the same transaction, occurrence, or series of transactions or occurrences" and involve common questions of law and fact. They cite several cases from other jurisdictions where joinder was allowed, even though causes of action arose at different times in unrelated accidents. Finally, the Kings contend that the trial court abused its discretion in severing the trials because it was prejudicial to them in that the jury could not allocate liability for Mrs. King's injuries between Fereday and Barron.

■ We have recognized that "[s]everence is a standard procedural practice, and may be resorted to for convenience and at the discretion of the trial court." *Coleman v. Dillman*, 624 P.2d 713, 716 (Utah 1981); Utah R.Civ.P. 21, 42(b). Severence is within the sound discretion of the trial court and, absent abuse of such discretion, will not be upset on appeal. In this case, we find no error or abuse of discretion.

■ The claims against Fereday arose from an automobile accident which occurred on December 13, 1978, whereas the claims against Barron arose from an accident which occurred on March 28, 1982. The places and circumstances of these two accidents are unrelated. Although both accidents were of a "rear-end" type, Mrs. King was the operator of the vehicle in the 1978 accident and was a passenger in the vehicle involved in the 1982 accident. We believe that it would have been an unreasonable burden to place upon a jury to sit

and hear testimony and receive evidence on the two separate accidents, to consider the arguments of counsel as to liability and damages for each accident and then retire and deliberate after being instructed separately as to each accident. To impose that heavy burden on one jury, we believe, would invite error and confusion.

The jury at the trial on the 1978 accident found Mrs. King 100 percent negligent, while the jury in the present action found Barron to be negligent and responsible for Mrs. King's injuries. Certainly, the trial court was justified in exercising its discretion to sever the claims in furtherance of convenience and to avoid confusion.

In the case of *Grove v. Thomas*, 446 N.E.2d 641 (Ind.Ct.App.1983), we find persuasive support for the trial court's action. In that case, the plaintiffs brought action against two defendant motorists to recover damages for injuries resulting from separate automobile accidents. Addressing the severance issue under rules identical to our own, the Indiana Court of Appeals reasoned:

> The plaintiffs first contend that joinder of the two claims was proper under Trial Rule 19(A)(1). That provision provides that "[a] person who is subject to service of process shall be joined as a party in the action if in his absence complete relief cannot be accorded among those already present." Their argument continues that because of the proximity in time of the accidents and the similarity of the injuries and their cause it would be very difficult to apportion damages between the two defendants. Thus, they conclude, complete relief cannot be accorded the plaintiffs without joinder of both defendants. We cannot agree that both defendants are needed for just adjudication of this matter. Difficulty in apportioning damages between the two defendants does not mean that complete relief cannot be granted. The plaintiffs have not shown that they will be unable to get all the relief to which they are entitled. They have merely speculated about the possibility of inconsistent verdicts. Such speculation is not sufficient to satisfy the requirements of Trial Rule 19(A). Joinder is not mandatory in this situation.

> The plaintiffs further contend that even if joinder was not mandatory under Trial Rule 19, it was permitted under Trial Rule 20. Trial Rule 20(A)(2) provides:

>> All persons may be joined in one [1] action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of, or arising out of, the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action.

> The test for determining whether the two causes of action arose out of the same transaction or occurrence is the logical relationship test.... There was no logical relationship between the two accidents that gave rise to this litigation. The accidents were totally unrelated and independent of each other; they occurred seven hours apart in different counties. Injury to the same person is not, standing alone, sufficient to satisfy the logical relationship test.... [T]he plaintiffs' right to relief against each defendant does not arise out of "the same transaction, occurrence, or series of transactions or occurrences," and permissive joinder is not appropriate.

*Grove*, 446 N.E.2d at 643 (citations omitted). We apply this reasoning to the case at hand and find no error.

## II

On cross-examination, counsel for Barron elicited testimony from Mrs. King that damages being sought by her in this action for medical expenses and lost wages for a period following the second accident had also been claimed and sought at the trial against Fereday. Mrs. King's counsel made no objection to the admission of this testimony. In fact, as previously stated, Mrs. King joined both Fereday and Barron in this lawsuit as joint defendants with the intention that the jury would "sort out" what items of damage sustained by her were attributable to each accident. When the court ordered separate trials, she

nevertheless presented to each jury her claims for medical expenses and lost wages incurred following the second accident. On redirect examination by her counsel, the trial court sustained an objection to a question asked her as to whether she had received an award for these items of damage in the Fereday action. The trial judge announced that "what the jury did in the previous action is not relevant to this lawsuit." The Kings argue that from her testimony on cross-examination, the jury could have inferred that she had already been compensated for these items of damages and that her clarifying testimony on redirect was relevant and necessary to dispel that inference.

As stated in Annotation, *Cross-examination of Plaintiff in Personal Injury Action as to His Previous Injuries, Physical Condition, Claims or Actions*, 69 A.L.R. 2d 593 (1960), as a general rule, a plaintiff may properly be cross-examined as to his previous injuries which are similar to those constituting the basis of the present action, for the purpose of showing that his present physical condition is not the result of the injury presently sued for, but was caused, wholly or partially, by an earlier injury. Because the defendant is liable only for injuries resulting from his negligence and not for the residual effects of a prior injury, such cross-examination is relevant and therefore admissible. *Boyd v. Smith*, 390 So.2d 994 (Miss.1980). The cases are not harmonious, however, when the cross-examiner goes beyond inquiry as to previous injuries and inquires about whether claims or lawsuits were filed in connection with those previous injuries. In the instant case, no objection was made by Mrs. King's counsel when she was asked on cross-examination whether she had made claim against Fereday for some of the damages she was seeking in the present action against Barron. She freely admitted that she had done so since she had joined Fereday and Barron in one lawsuit so that one jury would determine which accident her medical expenses and damages flowed from. When, however, the trial court ordered separate trials, this objective was thwarted, and consequently she made claim

for some items of damages at both trials. Since she made no objection to this line of cross-examination, we assume for the purposes of this case that it was proper. This brings us to the question of whether on redirect examination Mrs. King should have been allowed to testify that she was not awarded any damages in the Fereday suit. Barron contends that her testimony as to claims she made against Fereday was admissible as a prior inconsistent statement or as an admission against interest. Barron would stop the inquiry there and not allow Mrs. King to explain on redirect examination what resolution was made of her claims against Fereday.

While there are cases which contain the broad statement that the amount of settlement received by a plaintiff for prior injuries is not relevant and therefore not admissible, those cases are usually where the *defendant* wants to disclose the amount of the settlement either through one of his witnesses on direct examination or through the plaintiff on cross-examination. Such a case is *Worthington v. Caldwell*, 65 Wash. 2d 269, 396 P.2d 797 (1964), cited by defendant. There, the plaintiff had sustained physical injury in two prior accidents. At the trial on the third accident, the defendants called as a witness a surgeon who had taken a lengthy medical history from the plaintiff when he examined her. In relating this history to the jury, he explained the injuries she had sustained in one of the prior accidents. He then gratuitously added, "[A]nd the case was settled with the assistance of an attorney for $4,000 in November of 1958." *Worthington*, 396 P.2d at 800. The trial court denied the plaintiff's motion for a mistrial, instructed the jury to completely disregard the reference to the claim made for the prior accident, and further told the jury that such evidence was stricken from the record and had no bearing on the case. On appeal, the Supreme Court of Washington held that while the physical injuries sustained by the plaintiff in the earlier accident were possibly relevant in proof of her physical condition at the time of her third

accident, the amount of money awarded in settlement was not pertinent.

We do not disagree with that analysis. However, that case did not involve the right of the plaintiff to explain on redirect examination the resolution of prior claims when they have been interjected into the case by the defendant on cross-examination. A much closer case on the facts is *Marsh v. Davidson*, 265 Or. 532, 510 P.2d 558 (1973), also relied upon by Barron. There, the plaintiff sued the defendant on a 1971 automobile accident. At trial, the plaintiff testified that she had been in an accident in 1965 in Nevada, but had fully recovered from her injuries. The defendant then introduced the complaint filed by the plaintiff in the Nevada lawsuit, in which she had alleged permanent injuries and sought $35,000 damages. The plaintiff endeavored to testify that she had settled the case for only $2,500 to dispel any inference that she had suffered permanent injuries in the Nevada accident. On appeal, in a five-to-two decision, the Oregon Supreme Court upheld the exclusion of the plaintiff's testimony on the ground that she could have produced better evidence of her injuries in the Nevada accident, such as the testimony of her treating doctor. The majority of the court observed that the amount of settlement might have some bearing on the severity of her injuries, but the amount might also have been agreed to because of a weak case of liability or lack of witnesses. The court pointed out that the trial judge had the discretion to weigh the probative value of the proffered testimony and declined to interfere with that exercise. Two justices dissented, taking the view that while the defendant was entitled to offer in evidence the plaintiff's allegations of similar injuries in the complaint in the previous Nevada case, he was not entitled to offer in evidence the amount prayed for as damages in that complaint and that when that evidence was admitted in evidence, the trial judge should have allowed the plaintiff to testify that she received only $2,500 upon settlement. The dissenting judges noted that consummated settlements with third persons are sometimes admissible, depending upon the pur-pose for which such evidence is offered. (Citing *McCormick on Evidence* § 274 (2d ed. 1972)). The dissenters wrote:

> Because the question whether plaintiff had already received payment for the same injury was "opened up" to speculation by defendant's offer of the entire previous complaint in evidence, including its prayer for $35,000, I am of the opinion that plaintiff was entitled to show the amount actually received by her as a result of that complaint. Otherwise, we would be condoning a practice under which one party is permitted by the trial judge to strike a questionable blow, over the objection of the other party, whose hands are then tied by the trial judge, at the request of the first party, when he attempts to defend himself.

*Marsh*, 510 P.2d at 563.

We are impressed with the logic and fairness of the views of the dissenting justices. They square with the general rule that a plaintiff on redirect examination should be able to explain answers to questions asked on cross-examination. A well-reasoned case holding that the plaintiff should be able, on redirect examination, to explain the resolution of a prior claim is *Kelsey v. Chicago, Rock Island & Pacific R.R.*, 264 Minn. 49, 117 N.W.2d 559 (1962), where the plaintiff sustained personal injuries when his truck hit a railroad tie discarded by the defendant railroad. A jury verdict was returned in favor of the defendant, and the plaintiff appealed, contending that the trial court erroneously admitted evidence of the amount of money he had received in settlement of an earlier similar injury. It was established that the plaintiff had been in the defendant's employ and that as a result of an injury, he had resigned from his employment and was paid $15,000 in settlement of all claims arising out of that earlier injury. The earlier injury was to the same area of the plaintiff's back which was injured in the later truck accident. On appeal, the court held that the instructions of the trial court clearly submitted a claim by the plaintiff for aggravation of a preexisting injury to his back.

In view of this, it was perfectly proper for defendant to bring out before the jury, in mitigation of that claim, the nature and extent of plaintiff's previous back injury. This would include the amount that he was paid in settlement therefor. What influence adverse to plaintiff this evidence may have had is indeed speculative since the jury need not have reached the question of damages. *If there was any adverse influence, any such effect could have been diminished or erased if plaintiff had availed himself of the opportunity he had to explain the precise nature of his previous injury as well as the terms of the settlement.*

*Kelsey,* 117 N.W.2d at 563 (emphasis added). *See also Kucza v. Stone,* 155 Conn. 194, 230 A.2d 559 (1967), and *Capone v. New York City Hous. Auth.,* 29 A.D.2d 951, 289 N.Y.S.2d 239 (1968), for additional examples of the right of a plaintiff to explain on redirect examination the circumstances surrounding an apparent out-of-court admission made by him which has been introduced into evidence by the defendant on cross-examination.

■ Barron argues that the trial court correctly ruled that whether Mrs. King recovered anything in the Fereday action is not relevant. The difficulty with his argument is that the questions asked Mrs. King on cross-examination left unanswered whether she had already recovered damages for her injuries. The jury was left to infer that perhaps she had recovered damages in the Fereday action and that she was here seeking double recovery. Since Barron's purpose in questioning Mrs. King about her claims in the Fereday action was to show her inconsistency, she should have been allowed on redirect to explain her apparent inconsistency and reduce its damaging effect on her case. We therefore conclude that under the fact situation here, the trial court abused its discretion when it refused to allow her to explain the outcome of the claim made in the previous action. Once the subject of previous claims had been interjected into the case by defendant to discredit Mrs. King, we believe that she was entitled to make a full disclosure on that subject to rehabilitate herself and to dispel any inference that a verdict for her would result in double recovery.

■ The question remains whether that erroneous evidentiary ruling was prejudicial. Rule 61, Utah Rules of Civil Procedure, directs us to disregard erroneous rulings on the exclusion of evidence unless to do so would be inconsistent with substantial justice. The jury was clearly instructed that it was to determine liability for the 1982 accident and to award damages flowing therefrom if Barron was found liable. Arguably, the jury determined that while Barron was liable, Mrs. King's 1978 injuries were not substantially aggravated by the Barron accident. On the other hand, the low amount of the jury's verdict ($1,865) may have stemmed from a belief on the part of the jury that Mrs. King had recovered in the Fereday suit some of the damages sought in the instant case, and the jury did not want to award her double recovery. We therefore conclude that the erroneous evidentiary ruling may have been prejudicial to Mrs. King, and we order a new trial on the question of damages only.

### III

Finally, Mr. King assigns as error the trial court's dismissal of his claim against defendant for loss of consortium. As in *King v. Fereday,* 739 P.2d 618, 623 (Utah 1987), we find no error. Our recent decision in *Hackford v. Utah Power & Light,* 740 P.2d 1281 (Utah 1987), disposed of this issue.

REVERSED AND REMANDED.

HALL, C.J., and STEWART and DURHAM, JJ., concur.

ZIMMERMAN, J., concurs in the result.